IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLENSIRRES SPENCER** | **CIVIL ACTION NO.: 2:13-CV-04706** |
| | **SECTION R** |
| **VERSUS** | **CHIEF DISTRICT COURT JUDGE:** |
| | **SARAH S. VANCE** |
| **HERCULES OFFSHORE, INC.,** | **DIVISION 3** |
| **HERCULES DRILLING COMPANY** | **MAGISTRATE JUDGE:** |
| **AND ABDON CALLAIS OFFSHORE, INC.** | **DANIEL E. KNOWLES, III** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
SEEKING DISMISSAL OF MAINTENANCE AND CURE CLAIMS
RELATED TO ALLEGED BACK INJURY**

**Overview**

Plaintiff, Glensirres Spencer, sued Hercules Offshore, Inc. and Hercules Drilling Company ("Hercules") under the Jones Act for injuries he allegedly sustained to his lower leg, knee and low back while working as a seaman aboard the rig 205 in June of 2012.[1] Hercules paid Spencer maintenance in the amount of $21.00 per day and also paid for total medical treatment in the amount of $40,321.05 through the beginning of February 4, 2014.[2] Of these totals, $23,875.75 is attributable to the alleged back injury.[3] He also seeks compensatory damages, punitive damages and attorney's fees for Hercules' alleged failure to honor its maintenance and cure obligations.[4]

---

[1] Complaint for Damages Under the Jones Act, Rec. Doc. No. 1, para. 6.
[2] Hercules has already paid a total of $40,321.05 in medical treatment through February 4, 2014 to or on behalf of Spencer. Not surprisingly, Spencer ignores the large amount of compensation he has received from Hercules. At deposition, when asked the basis of payments for his medical treatment, Spencer ultimately responded "I don't know" and said "his father paid for the medicals." When asked to clarify, he "did not know what the arrangements were." Deposition of Glensirres Spencer, Exhibit "A," pp. 137, 142-143.
[3] See attached spreadsheet, Exhibit "B."
[4] Complaint, Rec. Doc. 1, para. 8 and 9. There simply is no evidence of deliberate misconduct to justify any punitive damages related to the maintenance and cure obligation.

During Hercules' investigation of Spencer's claims, it discovered he had intentionally concealed (1) prior treatment for back pain in 2008, and (2) a light duty restriction by the emergency room doctor after a motor vehicle accident. At deposition, Spencer lied about any prior back injury by saying he had neck and back pain in 2010 after he slept wrong.[5] He otherwise denied any prior neck or back complaints. During discovery, Hercules also learned that Spencer deliberately lied about his prior military employment. In his application for employment, he flat-out denied he was ever in the military. His military records, however, show he was dishonorably discharged after he was convicted of stealing a knife during a two-year enlistment with the Marines, not because he went AWOL too many times, as he testified in his deposition. That conviction may also interfere with his ability to obtain a TWIC card. He may have even lied about the TWIC application at deposition. He said he has applied for one, but "just didn't have the time to go get it."[6] The deliberate concealment of his prior motor vehicle accident and low back complaints, as well as the non-disclosure of his dishonorable discharge show an incredible witness and trigger denial of maintenance and cure related to the extensive back treatment Hercules has paid for.

Under *McCorpen v. Central Gulf Steamship Corporation,* 396 F. 2d 547 (5th Cir. 1968), and its progeny, maintenance and/or cure is not owed when the seaman has willfully concealed a pre-existing medical condition that was material to the employer's decision to hire the seaman and there is a causal connection between the injury complained of and the withheld information. Spencer withheld from Hercules prior treatment for low back pain, significant pre-existing pain from the motor vehicle accident, and light duty restrictions. The concealment was material to Hercules' decision to hire him. Part of his current injury (Hercules also paid for arthroscopic

---

[5] Exhibit "A," pp. 169, 175.
[6] Exhibit "A," pp. 163-164.

knee surgery) is to the same area of his low back, such that the causal connection is evident. As a result, Spencer's claims for maintenance, cure and damages related to the back treatment and alleged back injury should be dismissed.

### Spencer's Application and Employment with Hercules

Spencer began working for Hercules as a roustabout in March/April of 2012 making $18.52 an hour.[7] He worked 14 days on and 14 days off while assigned to the jack-up rig 205.[8] To obtain employment, he filled out a post-offer employer medical questionnaire for Hercules, and participated in an extensive back injury prevention educational program with the Center for Work Rehabilitation, Inc. on March 22, 2012. After the back injury program, he completed a questionnaire concerning previous injuries and medical treatment.[9] On these questions, Spencer denied any prior injury or any medical treatment. In fact, after acknowledging the importance of full disclosure by signing the form,[10] he denied any injury at all. He responded:

> A. I have never sustained an injury nor sought medical attention for a physical problem (except for sickness or flu, etc): Signed: [Glensirres Spencer]

On the next page of the application, he denied specific questions seeking disclosure of prior back injuries. These questions included:

> Do you now have or have you ever had any of the following medical problems? (Put your initials next to correct response) Back Trouble ___Y [GS]N (initialed)

> Have you ever been told by a doctor that you have any problems in your back/neck? ___Yes [GS]No (initialed)

---

[7] Exhibit "A," p. 34.
[8] Exhibit "A," p. 37.
[9] "If you have had a previous injury or sought medical attention for a physical problem, please elaborate below: (Include any serious childhood injuries)." The Center for Work Rehabilitation questionnaire is attached as Exhibit "C."
[10] The following medical questions are asked to obtain necessary information to allow your employer to receive reimbursement from the Second Injury Fund in case of an injury. Your employer does not discriminate against the disabled. The information you provide will be kept confidential and will not adversely affect your employment unless you are unable to perform essential functions of this job. Failure to answer these questions truthfully may result in forfeiture of you worker's compensation benefits and/or disciplinary action which may include termination of employment (LA. R.S. 23:1021-1361).

3

He also signed the application, again after the following request for truthful and honest answers as the basis for hiring.  Specifically, the application provided the following:

> I CONFIRM THAT TO THE BEST OF MY KNOWLEDGE, THE INFORMATION I PROVIDED IS CORRECT.  I UNDERSTAND FALSIFICATION OF THIS FORM MAY RESULT IN TERMINATION.  I give my permission to CWR to relay this medical information to the company that I am applying with and all their agents.
>
> Signed: [Glensirres Spencer]         3/22/12
> EMPLOYEE SIGNATURE            DATE
>
> Signed: [B. Floyd]                          3/22/12
> WITNESS SIGNATURE             DATE
>
> Client's Name Printed:  Glensirres Spencer

Finally, as part of the application process, he also met with the occupational physician, Kirtland D. Swan, M.D.[11]  In that portion of the application, he also intentionally concealed prior lower back injuries.  For example, he was asked:

> HEALTH HISTORY:  Have you had, been told have/had or been treated for:
> 1. Disorder of the neck/back, spine, knee, bones, arthritis, muscles, joints, leg or arm pain? [Checked] NO

Dr. Swan checked "no" and also wrote the following regarding this interview:  "No history of back problems."

At the time he filled out the application, Spencer was working for Ingalls Shipbuilders as a welder.  As a result, he also filled out a third part of the application related to wearing respirators.  In the sections of an OSHA respirator medical evaluation questionnaire, he once again intentionally concealed his prior back injury.  In that questionnaire,[12] he was also asked about prior back injuries.  First, he did not check the box for a back injury.  Next, he answered "No" to each of the following questions:

---

[11] The physical exam questions by Dr. Swan are attached as Exhibit "D."
[12] The OSHA questionnaire is attached as Exhibit "E."

4

15. Do you currently have any of the following musculo-skeletal problems?
   A. Weakness in any part of your arms, hands, legs or feet
   B. Back pain
   C. Difficulty fully moving your arms and legs
   D. Pain or stiffness when you lean forward or backward at the waist
   E. Difficulty fully moving your head up or down
   F. Difficulty fully moving your head side to side
   G. Difficulty bending at your knees
   H. Difficulty squatting to the ground
   I. Climbing a flight of stairs or a ladder carrying more than 25 pounds
   J. Any other muscle or skeletal problem that interferes with using a respirator

To compound matters, he also lied about his prior military service so that any medical conditions could likewise not be investigated. In the questionnaire, he was specifically asked, "Have you been in the military service?" He checked "No."[13]

### Spencer's Denial of Prior Military Service

Spencer deliberately denied prior military service in his employment with Hercules. The reason -- he was convicted of stealing a bayonet "knife" during basic training for the Marines.[14] His military records document (1) jail time of 30 days following conviction for the offense under the Uniform Code of Military Justice; and (2) a bad conduct dishonorable discharge that was not concluded until March 28, 2003.[15] Notably, the failure to disclose the conviction may have prevented him from passing the security clearances necessary to secure his TWIC card.[16] The failure to disclose either the prior medical condition related to the back or his military service left Hercules with the inability to evaluate any medical condition related to the back during that time frame.

---

[13] See Exhibit "E."
[14] Military records are attached as Exhibit "F."
[15] See Exhibit "F."
[16] http://www.tsa.gov/stakeholders/frequently-asked-questions-0#disqualification

**The Prior Back Injury**

Notwithstanding his failure to disclose two years of military service culminating in brig time and a dishonorable discharge, Spencer never disclosed a significant motor vehicle accident which occurred on January 28, 2008. In records obtained from Forrest General Hospital,[17] he reported a significant motor vehicle accident. The records indicate he was a passenger in a van that struck a deer while traveling 65 m.p.h.

> Patient in backseat of van riding about 415 am. States deer ran into the middle of the road. Driver slammed on breaks and his head hit the car seat in front. States neck and back are hurting now and rates the pain a 7 on a 0-10 scale. C-collar was put on in triage.[18]

The records also report "acute onset of back upper L/S pain" by the emergency room treating physician. The records describe "MVA seatbelt on -- 65 miles/hr."[19]

Ultimately, he was placed on light duty restrictions for the next two days.[20] These injuries are exactly what he claims he injured during the alleged incident on rig 205. Notably, Hercules has paid for extensive medical treatment related to the similar back injury *McCorpen* is designed to preclude.

**Spencer's Present Complaints Include Back Pain
That Has Required Significant Expenses to Treat**

Following the alleged injuries on rig 205, Spencer was airlifted to West Jefferson Hospital where he underwent emergency fasciotomy to his lower left leg. After several days of observation and recovery, he was discharged and asked to return for follow-up treatment in approximately 10-12 days. The medical treatment and subjective complaints of back pain are well documented in Hercules' Memorandum in Support of its Motion to Compel an FCE (R.

---

[17] Forrest General Hospital medical records are attached as Exhibit "G."
[18] See Exhibit "G."
[19] See Exhibit "G."
[20] See Exhibit "G."

Doc. 34-1). The records, however, establish both back pain and treatment of the knee are exaggerated. Hercules paid for several of these questionable procedures.

After returning to Mississippi, Spencer underwent several MRI studies that did not reveal trauma related to the accident. A June 25, 2012 lumbar spine MRI revealed "MILD multi-level degenerative changes," but "no focal disc herniation or spinal stenosis."[21] An MRI of the left knee did not reveal any "fracture, contusion or dislocation" and no injury to the ACL, though it was considered diminutive. Overall, there were no significant abnormalities present.[22] A later MRI of Spencer's thoracic spine likewise was unremarkable, the radiologist reporting an "[e]ssentially negative MRI thoracic spine without contrast."[23] Despite the absence of any pathology on the diagnostic studies, Spencer continues to present with subjective complaints of back and knee pain over 1.5 years after the accident. And Hercules continues to pay for these approved procedures.[24]

---

[21] See R. Doc. 34-1, the June 25, 2012 MRI report of Spencer's lumbar spine.

[22] See R. Doc. 34-1, the June 25, 2012 MRI report of Spencer's left knee. Dr. Gandy's interpretation of the images was the same. The November 2013 arthroscopic surgery Plaintiff requested, likewise confirms that there no injury to the left knee exists, and the knee is stable. (See R. Doc. 34-1, Dr. Nipper's arthroscopy report of Spencer's left knee.)

[23] See R. Doc. 34-1, the October 1, 2012 MRI report of Spencer's thoracic spine.

[24] In July 2012, Spencer was referred to Dr. Adam Lewis, a neurosurgeon in Jackson, Mississippi, for surgical evaluation. Dr. Lewis reviewed the earlier MRI of the lumbar spine and reported that the imaging showed "good alignment and disc height, no HLD (herniated lumbar disc) or stenosis" and some arthopathy (degenerative arthritis of the joint) at L4-5. Dr. Lewis confirmed the prior radiologist's interpretation that the lower back showed some arthritic changes, but no evidence of an injury. Notably, at an October 23, 2012 office visit, Dr. Lewis ordered an MRI of the thoracic spine. Just like the other images on Spencer, the thoracic spine (and pelvis) images were "essentially negative" of injury. (See R. Doc. 34-1, the October 1, 2012 MRI reports of Spencer's pelvis). Dr. Lewis diagnosed Spencer with spondylosis of the lumbar spine and pain of the thoracic spine, and recommended continued physical therapy and injections at T10/11 and L5/S1 to alleviate his subjective complaints of pain. Plaintiff's persistent complaints of pain were not correlated through imaging and examinations, and Dr. Lewis did not recommend surgery. (See R. Doc. 34-1, the October 23, report from Dr. Lewis). Yet, Hercules continued to pay for any approved procedure.

With no indication that surgery was necessary to repair his back or knee, Spencer began treatment with Dr. John Adams, D.O., a pain management physician in Dr. Lewis' office in Jackson. Spencer's medical condition continued to involve two separate ongoing complaints: continued pain in his lower back and left knee pain.
Spencer is not a candidate for back surgery, according to his own neurosurgeon, Dr. Lewis, yet Hercules continues to pay for these expensive procedures. In November 2012, Dr. John B Adams diagnosed Spencer with displaced thoracic and lumbar discs and thoracic and lumbar radiculitis, despite MRI interpretations by the radiologist and Dr.

The end result is that because of Spencer's subjective complaints of back pain and his failure to disclose his prior back complaints and associated treatment, significant maintenance and cure has been paid related to the back. In this motion, Hercules seeks partial summary judgment to dismiss the claims for maintenance and cure relative to his back under *McCorpen* and its progeny.

## Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavit, show there is genuine issue as to any material fact. Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if it would allow a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to defeat summary judgment the nonmovant must go beyond the pleadings to produce specific facts to demonstrate a genuine issue for trial.

---

Lewis which reflected only mild degenerative (arthritic) changes. Dr. Adams performed steroid injections and recommended additional injections if Spencer's pain persisted. Notably, Spencer advised Dr. Gandy the injections provided little relief and actually caused migraine headaches. (See R. Doc. 34-1, Dr. Gandy's Affidavit which includes the IME report by Dr. Gandy).

Dr. Adams later recommended palliative treatment with a nerve stimulator implant, which Hercules has also paid for. On the whole, even Dr. Adams has not identified any anatomical or physiological explanation for Spencer's continued course of pain medication and nerve stimulator. However, at the same time, and without any objective measure of Spencer's physical capabilities, Dr. Adams summarily opines that Spencer is fully disabled, without referencing any diagnostic manual or other medical professional standard that he can use to arrive at that opinion. (for example, the *AMA Guides to the Evaluation of Permanent Impairment*, 6th Edition). He essentially relies on Spencer's subjective complaints of pain and cloaks Spencer's complaints with the authority of his position as a physician.

On April 1, 2013, Dr. Gandy, like Dr. Lewis before him, did not observe any condition that required surgical treatment. He essentially thought Plaintiff had soft tissue injuries that should respond to a continued course of physical therapy for back and knee rehabilitation and conditioning. But, if the knee symptoms persisted, Dr. Gandy considered diagnostic arthroscopic surgery to be appropriate. Dr. Gandy did not find any injury to the back after physical examination. Dr. Gandy's report assessed Spencer with back and leg pain which reflected Plaintiff's subjective complaints, but did not diagnose any disease, disorder, or injury, and certainly not any complete disability. (See R. Doc. 34-1, Dr. Nipper's arthroscopy report of Spencer's left knee. Hercules is not downplaying the significance of the initial injury, for which surgery was performed. But these injuries do not ordinarily cause residual limitations).

*Webb v. Cardiothoracic Surgery of Associates of N. Texas*, 139 F. 3d 532, 536 (5th Cir. 1998); *Travelers Ins. Co. v. Liljeberg Enters*, 7 F. 3d 1203, 1207 (5th Cir. 1993).

### **The *McCorpen* Defense**

A Jones Act employer is entitled to investigate a claim for maintenance and cure. *Morales v. Garijak, Inc.,* 829 F. 2d 1355, 1358 (5th Cir. 1987). It may rely on certain defenses to deny these claims. *Brown v. Parker Drilling Offshore Corporation*, 410 F. 3d 166, 171 (5th Cir. 2005). Maintenance and cure "is not owed where a seaman knowingly or fraudulently" conceals a pre-existing injury from the shipowner/employer. *McCorpen*, 396 F. 2d at 548. To establish a *McCorpen* defense, the employer must prove: (1) the seaman intentionally misrepresented or concealed medical facts; (2) the concealed facts were material to the employer's decision to hire the seaman; and (3) a causal connection between the withheld information and the injury complained of in the lawsuit. *Brown*, 410 F. 3d at 171. All of the elements of the *McCorpen* defense are met here.

(1) Intentional concealment

"Where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, he is not entitled to an award of maintenance and cure." *McCorpen*, 396 F. 2d at 549. This element does not require subjective intent to deceive and does not turn on credibility; it only requires the failure to reveal a medical condition about which he has been asked. *Brown*, 410 F. 3d at 174, 175. In short, barring a language barrier or significant learning disability affecting the employee's ability to communicate, the fact that a specific question was asked and then answered incorrectly satisfies this element.[25] As evident by

---

[25] See also, *Caulfield v. Kathryn Rae Towing*, 1989 AMC 1769 (E.D.La. 1989) (no factual dispute where plaintiff knew information on his job application was not correct); *Bud's Boat Rental, Inc. v. Wiggins*, 1992 U.S. Dist.

Hercules' use of several questionnaires, there is little question Spencer intentionally concealed his prior back injury. Not only did he omit his prior back complaints, he also lied about his military service and his dishonorable discharge.

In *McCorpen*, the employer had plaintiff complete a form "that was obviously designed to elicit information about past illnesses of importance," and plaintiff failed to reveal his diabetes. *McCorpen*, 396 F. 2d at 549. The Court found plaintiff could read, write and understand English, and knew when he was examined by the employer's physician that he had a disabling disease. *Id*. at 551. The Court concluded these facts satisfied the intentional concealment element of the employer's defense.

More recently, in *Brown v. Parker Drilling*, 410 F. 3d 166, (5th Cir. 2005), the Fifth Circuit overturned a jury verdict to hold the plaintiff had intentionally concealed a prior back condition where the facts were less compelling than those before this Court. The prior injuries in *Brown* were relatively minor back strains. However, the "current" injury had occurred only nine months after Brown had been fired from his previous employer for failing to report a prior back injury that had occurred ten months before his application for that job. Parker Drilling's health history form had specifically asked whether the applicant had suffered "Past or Present Back and Neck Trouble," to which Brown responded negatively. *Brown*, 410 F. 3d at 171. This constituted intentional concealment.

Spencer, now 31 years old, is a high school graduate who can read and write English.[26] At the time he applied for work with Hercules, he was working for Ingalls and had two years of dishonorable service with the Marines. In short, he is intelligent and knowledgeable of the

---

LEXIS 13094 (E.D. La. Aug 24, 1992) (no genuine issue of material fact where plaintiff "plainly concealed his past history" of back trouble); *In re: L.S.K. Towing, Inc*., 1995 U.S. Dist. LEXIS 7971 (E.D. La. Jun. 5, 1995) ( no factual dispute where plaintiff concealed medical facts).
[26] Exhibit "A," pp. 24, 27.

application process and the consequences of non-disclosure.  Hercules' application forms asked straightforward questions about prior back treatment, injuries, diseases or restrictions, and Spencer withheld the truth.  The first element of the *McCorpen* defense has been met.

(2) <u>Materiality</u>

If an employer asks a specific medical question on a job application and the inquiry is "rationally related to the applicant's physical ability to perform his job duties," the information sought is deemed material.  *Brown*, 410 F. 3d at 175.  The *Brown* Court recognized that because offshore work is demanding and potentially dangerous, "[e]mployers need to be certain that each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employee."  *Id.*  Thus, a history of back injuries/problems is "the exact type of information sought by employers like Parker Drilling" and is relevant to those employers' hiring decision.  *Id.*

Like Parker Drilling, Hercules employs workers in the offshore environment.  For the reasons articulated in *Brown,* Hercules likewise asks each applicant about prior back problems or restrictions on its application forms.  Spencer lied in response to those questions.  The second element of the *McCorpen* defense has been met.

(3) <u>Causality</u>

To establish causality, all that is required is "a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage."  *Brown*, 410 F. 3d at 176.  "There is no requirement that a present injury be identical to a previous injury."  *Id.*  Courts have consistently held that injuries to the same area of the lumbar spine are sufficient to establish causality.[27]  In *Brown,* the plaintiff had suffered a lumbar strain in 1998 and 2000, with

---

[27] The courts in *Weatherford v. Nabors Offshore Corp.*, 2004 U.S. Dist. LEXIS 3435 (E.D. La. March 1, 2004), *Fox v. Plaquemines Parish Gov't,* 1999 U.S. Dist. LEXIS 19544 (W.D. La. June 26, 1993), and *Guillory v. Northbank*

11

possible disc herniations at L4-5 and L5-S1.  Because his subsequent injuries were to the same lumbar levels the causal link between the concealed information and the new injury was established.  *Id.*

The pertinent facts before this Court are indistinguishable from those in *Brown* and the decisions cited in footnote 2.  Spencer was treated for low back and sacral pain in 2008 following a significant motor vehicle accident.  The van in which he was a passenger struck a deer at 65 m.p.h.  He was restricted to light duty work for two days.  Undoubtedly, his attorneys will try to downplay the significance of the accident and his medical treatment following this particular motor vehicle accident, but the reality is there is nothing wrong with plaintiff's back today.  His own doctor indicates he is not a candidate for low back surgery.  The diagnostic studies are benign.  His complaints of low back pain in 2008 are precisely the same type of back injuries he claims in this matter.

And there can be no doubt that plaintiff intentionally omitted reference to those prior problems.  Hitting a deer at 65 m.p.h. and undergoing multiple diagnostic studies at the emergency room are not the type of thing one forgets, and particularly not when prompted by specific questions on a form shortly after one has undergone a course on proper disclosure and back prevention.  The third and final element of *McCorpen* has been met.

For these reasons, Hercules' Motion for Partial Summary Judgment must be granted.  All claims for maintenance and cure related to the alleged lower back injury must be dismissed.

Respectfully submitted this 25th day of March, 2014.

---

*Towing Corp.*, 1993 U.S. Dist. LEXIS 21338 (W.D. La. June 26, 1993), all granted summary judgment for the employer on maintenance and cure claims where plaintiffs' prior (undisclosed) and current back problems were in the same area of the back.

        HERCULES OFFSHORE, INC., AND
        HERCULES DRILLING COMPANY

        By: */s/ John S. Garner*
        John A. Scialdone (LA Bar No. 21859)
        Todd G. Crawford (LA Bar No. 20150)
        John S. Garner (LA Bar No. 25314)
        FOWLER RODRIGUEZ
        2504 14th Street, Suite 500
        Post Office Box 4080 (39502)
        Gulfport, MS 39501
        Tele: (228) 822-9343
        Fax:  (228) 822-9343
        *Attorneys for Hercules Offshore, Inc.*
        *and Hercules Drilling Company, LLC*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 25th day of March, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record by operation of the Court's electronic filing system.

        */s/ John S. Garner*