UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


GLENSIRRES SPENCER                          CIVIL ACTION

VERSUS                                      NO: 13-4706

HERCULES OFFSHORE, INC., et al.             SECTION: R(3)


                       **ORDER AND REASONS**

     Defendants Hercules Offshore, Inc. and Hercules Drilling Company ("Hercules") move for reconsideration of the Magistrate Judge's denial of their motion to compel a functional capacity evaluation, or, alternatively, move for an adverse inference.[1] For the following reasons, the Court DENIES Hercules' motions.


I.   **Background**

     Spencer sues Hercules and Abdon Callais Offshore, LLC ("Abdon Callais") under the Jones Act and general maritime law.[2] He alleges that he was injured in the course of his employment with Hercules.[3] Specifically, he alleges that, on or about June 9, 2012, he sustained injuries while offloading "casing" from Hercules' Rig 205 to a supply vessel owned and/or operated by Abdon Callais.[4] He alleges that, "[a]s a consequence of the

---

[1] R. Docs. 57, 58.

[2] R. Docs. 1, 18.

[3] R. Doc. 1 at 2.

[4] *Id.*; R. Doc. 18 at 2.

negligence of the defendants and the unseaworthiness of the vessels, [he] has been caused to sustain severe and disabling injuries entitling him to damages."[5]

The record indicates that on June 9, 2012 Spencer suffered a "crush injury" when "heavy equipment" fell on his legs and pinned him to the ground.[6] He underwent an emergency fasciotomy to his left leg at West Jefferson Medical Center.[7] Since that time, he has continued to suffer leg and lower back pain.[8] He has received treatment from several physicians, including Dr. Elliot Nipper, an orthopaedist, and Dr. Adam Lewis, a neurologist.[9] In July or August 2012, he began physical therapy.[10] On January 17, 2013, he discussed with Dr. Nipper the possibility of arthroscopic intervention to his knee.[11]

On April 1, 2013, at Hercules' request, Spencer underwent an independent medical examination conducted by Dr. David Gandy, an orthopaedist.[12] While noting that Dr. Nipper had recommended knee

---

[5] R. Doc. 1 at 2.

[6] R. Doc. 72-2.

[7] *Id.*

[8] R. Doc. 72-3.

[9] *Id.*; R. Doc. 72-4.

[10] R. Doc. 72-3 at 1-2.

[11] *Id.* at 2.

[12] R. Doc. 72-5.

arthroscopy, Dr. Gandy concluded that "it would be more advisable to have [Spencer] proceed with physical therapy . . . . I would recommend a course of 4-6 weeks. If after that time he is still symptomatic in either [his back or his knee] then I would recommend a functional capacity evaluation ["FCE"]. If the knee symptoms have persisted at that point it will be appropriate to consider a diagnostic arthroscopy."[13]

On November 6, 2013, with Spencer still experiencing pain, Dr. Nipper conducted a diagnostic arthroscopy of Spencer's left knee.[14] The procedure revealed that Spencer's "medial and lateral joint surfaces were in satisfactory condition without evidence of meniscal tearing."[15]

On January 20, 2014, Dr. Lewis wrote a letter to Spencer's counsel, opining that Spencer "will need pain management services indefinitely," and that Spencer's "physical limitations, coupled with his use of medication for chronic pain[,] will prohibit him from returning to his former occupation as an offshore worker or

---

[13] *Id.* at 4.

[14] R. Doc. 35-11. In his February 3, 2014 letter summarizing Spencer's medical treatment, Dr. Nipper states that Spencer underwent a diagnostic arthroscopy on February 6, 2013, not November 6, 2013. R. Doc. 72-3 at 2. This date appears to be in error, as the parties agree, and the record elsewhere indicates, that Spencer's diagnostic arthroscopy took place on November 6, 2013. *See* R. Doc. 35-1 at 5; R. Doc. 35-11; R. Doc. 58-1 at 2 n.1; R. Doc. 72 at 3.

[15] R. Doc. 72-3 at 2; *see also* R. Doc. 35-11.

any type of full time competitive gainful employment."[16] On February 3, 2014, Dr. Nipper wrote a letter to Spencer's counsel, opining that "Spencer will have chronic limitations to his lower extremity," and that "he will not be able to return to the manual labor offshore work that he was previously participating in."[17]

On February 3, 2014, Hercules requested that Spencer undergo an FCE, "[b]ased on Dr. Gandy's recommendations."[18] Spencer objected, and Hercules filed a motion to compel an FCE.[19] Hercules attached to its motion an affidavit, in which Dr. Gandy states that "there is no anatomical explanation for Spencer's ongoing knee pain."[20] He further states, "I do not believe any restrictions are necessary, or warranted. In order to assess [Spencer's] limitations, if any, an FCE is indicated."[21]

The Court referred Hercules' motion to the Magistrate Judge, who heard oral argument on March 19, 2014.[22] Hercules' counsel argued that an FCE is warranted, because Spencer's doctors "cannot find anything wrong with him" yet say "that he is totally

---

[16] R. Doc. 72-4.

[17] R. Doc. 72-3 at 3.

[18] R. Doc. 72-6.

[19] R. Doc. 35.

[20] R. Doc. 35-8 at 2.

[21] *Id.* at 3.

[22] R. Doc. 100.

4

and completely disabled."[23] Counsel argued that "[t]he only way to know with certainty [whether Spencer has physical restrictions] is to actually have the FCE done."[24] In response, Spencer's counsel objected to the timing of Hercules' request for an FCE, which came just three days before the deadline for Spencer's expert reports.[25] Counsel stated, "[W]e don't have an FCE, not because we are trying to hide something, but [because] we [didn't] think it was necessary. . . . [Hercules' request] puts us in a bad situation trying to get an FCE at this point."[26]

During the hearing, the Magistrate noted that the parties have comparable expert opinions supporting their respective positions. Speaking to Hercules' counsel, he said, "[Spencer doesn't] have an FCE. [He] just [has] a doctor saying that [he is disabled]. And you have a doctor saying the opposite."[27] The Magistrate denied Hercules' motion to compel, stating "I'm not going to set a precedent where in every case somebody can come in asking for [an FCE] when the plaintiffs don't have one and don't intend to put that evidence on at trial."[28]

---

[23] *Id.* at 4.

[24] *Id.* at 5.

[25] *Id.* at 6.

[26] *Id.* at 6-7.

[27] *Id.* at 4.

[28] *Id.* at 9.

Hercules moves for reconsideration of its motion to compel.[29] In the alternative, it asks the Court to instruct the jury to draw an adverse inference from Spencer's refusal to submit to an FCE.[30]

## II. Motion for Reconsideration

*A. Standard of Review*

With certain exceptions not applicable here, a magistrate judge may hear and determine any pretrial matter pending before a district court. 28 U.S.C. § 636(b)(1)(A). The district court will affirm the magistrate judge's decision on any nondispositive matter, unless it is "clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 72(a). Under this highly deferential standard, the court will reverse only when "on the entire evidence [it] is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

*B. Discussion*

When a plaintiff's physical condition is in controversy, the court may order the plaintiff to submit to a physical examination on motion for good cause. Fed. R. Civ. P. 35(a). Even when good

---

[29] R. Doc. 57.

[30] R. Doc. 58.

cause is shown, however, it is "in the sound discretion of the trial court whether to order the examination." *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970) (citing *Teche Lines v. Boyette*, 111 F.2d 579, 581 (5th Cir. 1940)); *see* Fed. R. Civ. P. 35(a) ("The court . . . *may* order a party . . . to submit to a physical or mental examination.") (emphasis added).

Hercules argues that the Magistrate committed clear error in denying its motion to compel an FCE, "because he allowed his concern for the precedent his decision may set for future cases to drive his decision, rather than the facts *of this case*."[31] The Court finds this characterization of the Magistrate's decision misleading. Although the Magistrate noted concern over the precedent a contrary ruling might set, it is apparent in context that he denied Hercules' motion on the ground that Spencer had not prepared an FCE and did not intend to present that type of evidence at trial, and thus it was not necessary for Hercules to obtain an FCE of its own.[32] In essence, the Magistrate determined that Hercules had not shown good cause to compel an FCE.

The Court finds that this determination was not clearly erroneous or contrary to law. When "the moving party has already made an examination in the past . . . the court will require a stronger showing of necessity before it will order repeated

---

[31] R. Doc. 57-1 at 4 (emphasis in original).

[32] *See* R. Doc. 100 at 4, 9.

7

examinations." 8B C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2234 (3d ed. 2010); *see Schlagenhauf v. Holder*, 321 F.2d 43, 51 (7th Cir. 1963) ("The number of examinations ordered should be held to the minimum necessary considering the party's right to privacy and the need for the court to have accurate information."), *vacated on other grounds*, 379 U.S. 104 (1964). Here, Spencer has already submitted to an independent medical examination with Dr. Gandy, who concluded that there is no anatomical explanation for Spencer's ongoing pain and that Spencer should not have any work restrictions. The Court finds that Hercules "has already had the benefit of an examination and report that should enable it effectively and adequately to defend [Spencer's] suit." *DeCresenzo v. Maersk Container Serv. Co., Inc.*, 741 F.2d 17, 21 (2d Cir. 1984).

"One of the purposes of [Federal Rule of Civil Procedure 35] is to level the playing field when a party's physical or mental capacity to engage in gainful employment is at issue." *Bergeron v. Beverly Dredging, LLC*, No. 08-3753, 2009 WL 1140414, at *2 (E.D. La. April 27, 2009). Here, there is no playing field to level, as Hercules has already physically examined Spencer, and Spencer has not engaged an expert to perform an FCE that Hercules needs to rebut. *Compare Cook v. Bayou Tugs, Inc.*, No. 11-112, 2011 WL 5930477, at *4 (E.D. La. Nov. 29, 2011); *Miller v. Chet*

*Morrison Contractors, L.L.C.*, No. 09-5457, 2010 WL 2292157, at *2 (June 2, 2010).

On reviewing the record, the Court is not "left with a definite and firm conviction that a mistake has been committed." *U.S. Gypsum*, 333 U.S. at 395. Accordingly, it holds that the Magistrate's decision was not clearly erroneous or contrary to law.

**III. Motion for Adverse Inference**

In the alternative, Hercules moves for an adverse inference. It argues that Spencer is concealing evidence by refusing to submit to an FCE, and asks the Court "to instruct the jury that it can draw an adverse inference against [Spencer] by his refusal."[33]

Adverse inference sanctions "are properly viewed as among the most severe sanctions a court can adminster." *Premier Dealer Servs., Inc. v. Duhon*, Nos. 12-1498, 12-2790, 2013 WL 6150602, at *9 (E.D. La. Nov. 22, 2013). In this Circuit, an adverse inference based on spoilation of evidence is predicated on the "bad conduct" of the party against whom the inference may be drawn. *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003). To obtain an adverse inference instruction, the movant

---

[33] R. Doc. 58-1 at 1.

must show that the opposing party acted in bad faith when it rendered potential evidence unavailable. *Id.*

The Court finds no bad faith in Spencer's objection to Hercules' request for an FCE. Spencer objected on the grounds that Hercules made its request only days before the deadline for Spencer's expert reports, that Spencer had not retained an expert of his own to prepare an FCE, and that he did not believe that an FCE was necessary. These arguments constitute legitimate objections to Hercules' motion to compel. The Court finds no indication that they were made in bad faith with the intent to conceal unfavorable evidence. Accordingly, an adverse inference instruction is not warranted.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES Hercules' motions for reconsideration and for an adverse inference.

New Orleans, Louisiana, this __28th__ day of April, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE